UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**EDWINA MAXWELL,**

        **Plaintiff,**

vs.                                      Case No.

**CLIMATE FIRST BANK, a
Florida corporation; and
KENNETH L. LaROE,**

        **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, EDWINA MAXWELL ("Plaintiff"), hereby sues Defendants CLIMATE FIRST BANK, a Florida corporation ("CFB"), and KENNETH L. LaROE ("LaRoe") (collectively "Defendants"), and alleges as follows:

### INTRODUCTION

1. This action is brought to recover actual and punitive damages based on Defendants' decision to discharge Plaintiff from employment based on her race and protected opposition to racial discrimination in violation of 42 U.S.C. § 1981 ("Section 1981").

### JURISDICTION AND VENUE

2. Plaintiff is not required to exhaust administrative remedies under § 1981.

3.  Jurisdiction of this Court over this matter is invoked pursuant to 28 U.S.C. § 1331.

4.  This Court has personal jurisdiction over Defendants.

5.  Venue is appropriate in the Middle District of Florida.

6.  At all times material to this action, Plaintiff was a resident of Pinellas County, Florida.

7.  At all times material to this action. Defendant CFB had its principal office in Pinellas County, Florida.

8.  Defendant LaRoe is the CFB's Chairman and Chief Executive Officer and is a resident of Lake County, Florida.

## FACTUAL BACKGROUND

9.  Plaintiff commenced employment with CFB as its Chief Talent Officer and Director of Diversity, Equity, and Inclusion ("DEI") on September 20, 2021.

10. Despite her title, Defendant LaRoe often referred to Plaintiff as Defendant CFB's "HR Director."

11. Plaintiff is an African-American woman over the age of 40 years old and graduated from law school.

12. Plaintiff directly reported to CFB's president, Frank "Lex" Ford, but had extensive and frequent interaction with Defendant LaRoe.

13. During Plaintiff's employment with Defendant CFB, Defendant LaRoe (White) referred to himself as a "racist" and a "redneck from Eustis."

14. Plaintiff made considerable efforts to prevent and object to unlawful discrimination being perpetrated against Black employees and candidates for employment with Defendant CFB.

15. Plaintiff was ultimately discharged because Defendants did not want to be monitored for their discrimination.

16. Consistent with her role as Chief Talent Officer and Director of DEI, Plaintiff frequently warned and objected to racial and other forms of unlawful employment discrimination being considered by Defendant LaRoe and other managerial employees of Defendant CFB. Plaintiff's objections were often disregarded.

17. In her seven months of employment with Defendant CFB, Plaintiff was never disciplined for non-discriminatory reasons.

18. In November 2021, Defendant CFB hired another woman of color, whom Defendant LaRoe often referred to as "our Hispanic, Native American, and Black" employee.

19. In January 2022, Plaintiff interviewed a Black applicant for employment who was highly qualified. Upon hearing the applicant's name, Defendant LaRoe stated: "I assume by his name he's either Black or a Southern

Baptist."

20. The hiring process for this Black applicant was elongated because CFB's president, Ford, subjected the applicant to multiple pre-employment assessments of questionable credibility because did not like the applicant's rating score.

21. In March 2022, a former employee of Defendant LaRoe's from a previous employer, who is Black, began interviewing for a position with Defendant CFB.

22. The pre-employment hiring process with Defendant CFB required consideration of the applicant's credit. CFB never adopted specific procedures to verify an applicant's credit.

23. Defendant LaRoe indicated to Plaintiff that he did not know how to read credit reports.

24. One week before the two Black applicants discussed above were scheduled to start their employment, Defendant LaRoe stated he was "panic-stricken" that Plaintiff had not been ordering background checks or credit reports for prospective employees and demanded to see the credit scores of the Black applicants even though he had never previously asked to see any information regarding a candidate's background check or credit report.

25. Plaintiff expressed a concern to Defendant LaRoe that he had never previously asked for this detailed credit information but asked for the two Black applicants who were hired and about to start work.

26. Plaintiff informed Defendant LaRoe that credit reports provided to her did not include credit scores, but only a summary. The summaries provided to Plaintiff were either colored green (indicating standard) or red (indicating that further review was required). Plaintiff told LaRoe that she was not a credit analyst, and that the summaries for the two Black applicants were green.

27. In addition to the credit reports of the two named applicants, Plaintiff sent Defendant LaRoe credit reports for a Hispanic male applicant labeled "standard" and a White female employee marked "review required" which Ford told Plaintiff to ignore.

28. Upon receipt of the four credit reports, Defendant LaRoe responded: "Who the hell is this?" and again demanded the two credit reports of the Black applicants.

29. Plaintiff later sent Defendant LaRoe every credit report she had run in 2022, to which Defendant LaRoe responded that a Black applicant had "shit" credit and should "never have been hired."

30. Plaintiff objected to the suspect nature of the assessment tests to which

one of the Black applicants was subjected.

31. After Plaintiff demonstrated issues with the assessment tests and receiving information from two separate third-parties on the unreliability of the tests, Ford stated, "It doesn't matter, we are going to use it the way [Defendant LaRoe] wants."

32. In late March 2022, Defendant CFB received an application for employment from a female Black individual who had previously worked for a company which had employed Defendant LaRoe. This Black applicant was highly qualified for the role and had earned a Ph.D. Nonetheless, Defendant CFB's Chief Financial Officer objected to her hiring because she believed she was "lazy" and "ghetto."

33. Plaintiff vocally objected to these racial tropes.

34. In late November 2021, Defendant CFB had received an application for one of two available Credit Analyst positions from a candidate with significant experience in the field. However the responsible branch manager refused to interview the candidate because he was "old." Plaintiff informed the branch manager and Ford that the candidate should be evaluated based on his suitability and not age.

35. Ford stated to Plaintiff, "We already have Susan and Tom. We don't need any more old people." Plaintiff then informed Ford that she and the

applicant were close in age, to which Ford nervously responded that Defendant CFB did not need anyone in a position that cannot be developed and promoted.

36. Plaintiff once again explained how age cannot be a factor in determining whether an employee can be developed or promoted, to which Ford finally acquiesced and allowed the manager to interview the candidate, even though he immediately told Plaintiff that the candidate would probably not be hired. Both Credit Analyst positions were filled with candidates under the age of 40.

37. Plaintiff was discharged on April 8, 2022.

38. Plaintiff was replaced by a White woman under 40 years of age without formal or informal human resource training.

39. Shortly after her termination, Plaintiff attempted to speak with the human resources committee of Defendant CFB's Board of Directors to report improper, discriminatory, and retaliatory behavior. Almost immediately after this attempt to communicate with the Board, Plaintiff was contacted by Defendant LaRoe who informed Plaintiff that he "would not hesitate" to sue her if she attempted to contact them again.

## COUNT I - RACIAL DISCRIMINATION IN VIOLATION OF SECTION 1981

40. Plaintiff realleges paragraphs 1 through 39 as if fully set forth herein.

41. Plaintiff was discharged because of her race.

42. Plaintiff has been damaged by the conduct of Defendants.

    WHEREFORE, Plaintiff requests this Honorable Court to:

    A. Grant Plaintiff an award of compensatory damages, punitive damages, back-pay, front-pay, and attorney's fees and costs.

    B. Grant Plaintiff a trial by jury and such further relief as the Court deems just and equitable.

## COUNT II - RETALIATION IN VIOLATION OF SECTION 1981

43. Plaintiff realleges paragraphs 1 through 39 as if fully set forth herein.

44. Plaintiff was discharged by Defendant because she engaged in protected opposition to racial discrimination prohibited by section 1981.

    WHEREFORE, Plaintiff requests this Honorable Court to:

    A. Grant Plaintiff compensatory damages, punitive damages, back-pay, front-pay, and attorney's fees and costs.

    B. Grant Plaintiff a trial by jury and such further relief as the Court deems just and equitable.

## COUNT III - RETALIATION IN VIOLATION OF FLORIDA STATUTES §448.102

45. Plaintiff realleges paragraphs 1 through 39 as if fully set forth herein.

46. Defendants retaliated against Plaintiff based on her objections to and refusal to participate in violations of law including violations of Section

1981 and the Age Discrimination in Employment Act.

47. As a result of Defendant's unlawful and retaliatory discharge from employment, Plaintiff has suffered damages, including (without limitation) economic and emotional distress damages.

WHEREFORE, Plaintiff requests this Honorable Court to:

    A.    Grant Plaintiff compensatory damages, back-pay, front-pay, pre- and post-judgment interest and attorney's fees and costs.

    B.    Reinstate Plaintiff to the same position.

    C.    Reinstate Plaintiff's full fringe benefits and seniority rights.

    B.    Grant Plaintiff a trial by jury and such further relief as the Court deems just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury as to all issues so triable.

Respectfully submitted,

BERMAN LAW FIRM, P.A.

By: */s/ Craig L. Berman*
Craig L. Berman, Esquire
BERMAN LAW FIRM, P.A.
Fla. Bar No. 068977
111 Second Ave. N.E.; Suite 706
St. Petersburg, FL 33701
Phone: (727) 550-8989
Fax: (727) 894-6251
cberman@tampabay.rr.com

**ATTORNEY FOR PLAINTIFF**